UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

TAILOR MADE TECH SOLUTIONS, INC.,

    Plaintiff,

v.     Civil Action No. 2:25-cv-290

NEXCORE SERVICES, INC., ,

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Tailor Made filed a Complaint for breach of contract and unjust enrichment, (ECF No. 1), and Defendant NexCore moved to dismiss under the doctrine of *forum non conveniens*, (ECF No. 8), arguing that the Subcontractor Master Agreements ("SMAs") between the parties include an enforceable forum-selection clause. Mem. Supp. Def. NexCore's Mot. Dismiss Pl.'s Compl. ("NexCore Mem.") (ECF No. 9). Tailor Made opposes the Motion, arguing that the SMAs are not valid contracts and the alleged forum-selection clauses are unenforceable. Mem. L. Opp'n Def.'s Mot. Dismiss ("Opp'n") (ECF No. 12). NexCore's reply argues that Tailor Made can't plead around the forum-selection clause by purporting to rely on earlier email exchanges, and the question of what documents constitute the parties' agreement must be resolved in the parties' agreed forum. Reply Mem. Further Supp. Def. NexCore's Mot. Dismiss Pl.'s Compl. ("NexCore Reply") (ECF No. 13).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, this matter was referred to me for a Report and Recommendation on NexCore's Motion to Dismiss. The court heard oral arguments of counsel via Zoom on September 18, 2025. After considering the parties' arguments, as stated on the record and explained below, I

1

find that the forum-selection clause in each SMA requires this dispute be brought in New Jersey state courts. Accordingly, I recommend the court GRANT NexCore's Motion to Dismiss, (ECF No. 8).

## I. BACKGROUND

### A. The Parties' Agreements

Plaintiff Tailor Made Tech Solutions, Inc. ("Tailor Made") is a North Carolina-based information technology consulting company that provides services such as hardware installation and network design, and subcontracts with other entities to supply service technicians and installers for specific job sites. Compl. ¶¶ 1, 5-6 (ECF No. 1, at 1-2). Defendant NexCore Services, Inc. ("NexCore") is a "consulting firm that connects businesses with service providers to perform work for retail establishments, including installing security hardware." NexCore Mem. (ECF No. 9, at 2) (citing Compl. ¶ 7 (ECF No. 1, at 2)). Security 101, a non-party to the suit, contracted with NexCore to find subcontractors to perform work at different Walmart locations. Compl. ¶ 8 (ECF No. 1, at 2). After soliciting bids for each project independently, NexCore accepted Tailor Made's bids for the four construction projects at issue in this case. Id. ¶¶ 9-16 (ECF No. 1, at 2-3). Prior to work beginning, NexCore emailed Tailor Made an SMA for each project to review and sign. Id. ¶ 15 (ECF No. 1, at 3); NexCore Mem. Ex. 1 ("Agnic Decl.") ¶ 4 (ECF No. 9-1, at 1). Tailor Made signed and returned each of them before NexCore countersigned. Agnic Decl. ¶¶ 5-6 (ECF No. 9-1, at 2).

Each SMA in this case incorporates by reference detailed plans and work schedules for the four construction projects, with provisions requiring written documentation for any alterations to the scope of work or completion schedule. Compl. ¶¶ 19-20 (ECF No. 1, at 3); NexCore Mem. Ex. 3 ("Norfolk 5488 Project SMA") ¶¶ 1-4 (ECF No. 9-3, at 1); NexCore Mem.

Ex. 5 ("Hampton 1631 Project SMA") ¶¶ 1-4 (ECF No. 9-5, at 1); NexCore Mem. Ex. 7 ("Front Royal 5105 Project SMA") ¶¶ 1-4 (ECF No. 9-7, at 1); NexCore Mem. Ex. 9 ("Norfolk 6798 Project SMA") ¶¶ 1-4 (ECF No. 9-9, at 1). The SMAs are fully integrated, disclaiming terms not expressly included nor incorporated by reference. Compl. ¶ 18 (ECF No. 1, at 3). Specifically, paragraph 36 of each SMA states: "This Agreement, including incorporated provisions currently existing or as subsequently presented in accordance with the terms hereof, states the entire agreement of the parties concerning the subject matter hereof and there are no other agreements either oral or written." Norfolk 5488 Project SMA ¶ 36 (ECF No. 9-3, at 5); Hampton 1631 Project SMA ¶ 36 (ECF No. 9-5, at 5); Front Royal 5105 Project SMA ¶ 36 (ECF No. 9-7, at 5); Norfolk 6798 Project SMA ¶ 36 (ECF No. 9-9, at 5). However, Tailor Made claims none of the SMAs included a price term, a mechanism to demonstrate satisfaction with the job completion, or a consistent payment schedule. Compl. ¶¶ 21-25 (ECF No. 1, at 4).

In its Complaint, Tailor Made argues NexCore breached its contract by failing to pay the total sums due for the following four projects: Job 5488 in Norfolk, Virginia ("Norfolk 5488 Project"), Job 1631 in Hampton, Virginia ("Hampton 1631 Project"), Job 5105 in Front Royal, Virginia ("Front Royal 5105 Project"), and Job 6798 in Norfolk, Virginia ("Norfolk 698 Project"). Id. ¶¶39-74 (ECF No. 1, at 5-8). Tailor Made alleges that for each project, after Tailor Made's project manager quoted NexCore a price to complete the scope of work, a representative for NexCore accepted Tailor Made's offer via telephone or email. Id. ¶¶ 41-42, 50-52, 59-60, 69-70 (ECF No. 1, at 6-8). Instead of including the SMAs as exhibits to the Complaint, Tailor Made attached only the four emails that it contends constitute the parties' entire agreement. The Complaint's first exhibit is an email exchange in which a NexCore representative requests and receives a signed SMA—attached to the email—from Tailor Made

3

for the Norfolk 5488 Project. Compl. Ex. 1 (ECF No. 1-1). The second exhibit is a similar email exchange—also referencing an attached SMA—for the Hampton 1631 Project. Compl. Ex. 2 (ECF No. 1-2). The third exhibit is an email exchange which says nothing about acceptance, instead addressing weekly updates for the Front Royal 5105 Project. Compl. Ex. 3 (ECF No. 1-3). Finally, the last exhibit—also unrelated to the acceptance of any bid—is an email exchange providing instructions to install a fire alarm, burglar alarm, and CX for the Norfolk 6798 Project. Compl. Ex. 4 (ECF No. 1-4).

Tailor Made's breach of contract claims are based on NexCore's nonpayment for services rendered. Upon receiving an initial 20% payment, Tailor Made commenced work on each project, and after allegedly completing 60% of the job, Tailor Made invoiced NexCore 30% of the contract price. Compl. ¶¶ 43-44, 52-53, 61-63, 71-72 (ECF No. 1, at 6-8). Tailor Made claims, "despite substantial completion of the contracted work," NexCore only partially paid the invoice for each project.[1] Id. ¶¶ 45-47, 54-56, 64-66, 73-74. NexCore's justification for nonpayment is that Tailor Made failed to complete the projects in accordance with the work schedules, but Tailor Made claims that despite working to cure any deficiencies, NexCore still refused to pay—breaching its contracts—and instead, chose to terminate Tailor Made from all four projects. Id. ¶¶ 34-38 (ECF No. 1, at 5).

Tailor Made's Complaint also includes an unjust enrichment claim as an alternative to the first four breach of contract claims. Specifically, Tailor Made argues that the signed SMAs did

---

[1] Tailor Made used an estimating software and quoted a different price for each project, and thus the alleged outstanding payment for each project varies. Compl. ¶ 13 (ECF No. 1, at 3). For the Norfolk 5488 Project, Tailor Made quoted $158,018.51 and received $44,071.71 after receiving the initial 20% payment from NexCore, leaving $82,343.50 unpaid. Id. ¶¶ 41-47 (ECF No. 1, at 6). For the Hampton 1631 Project, Tailor Made quoted $169,026.51 and received $38,449.35 in addition to the initial payment from NexCore, leaving $96,770.25 unpaid. Id. ¶¶ 50-56 (ECF No. 1, at 6-7). For the Front Royal 5105 Project, Tailor Made quoted $45,255.95 and received both the initial 20% payment and an additional $7,262.80, leaving $28,942.00 unpaid. Id. ¶¶ 59-66 (ECF No. 1, at 7-8). Finally, for the Norfolk 6798 Project, Tailor Made quoted $81,410.13 and received nothing beyond the initial 20% payment, leaving $61,057.50 unpaid. Id. ¶¶ 69-74 (ECF No. 1, at 8).

not include a written price term or have a clear payment schedule, which renders the SMAs void. Id. ¶¶ 76-84 (ECF No. 1, at 8-9). Despite the lack of a valid contract, Tailor Made claims that by substantially performing work for each project, it conferred a benefit upon NexCore and expects compensation for its work. Id. ¶¶ 85-89 (ECF No. 1, at 9-10). Thus, Tailor Made requests the court enter a judgment against NexCore in the amount of $270,000 plus interest. Id. ¶ 89 (ECF No. 1, at 10).

B. **Current Motion**

NexCore moved to dismiss the case under the doctrine of *forum non conveniens*, arguing that "[e]ach SMA has a clear and enforceable choice-of-law and forum-selection clause, requiring any dispute concerning the SMA to be brought in the 'Courts of the State of New Jersey.'" NexCore Mem. (ECF No. 9, at 1). Specifically, paragraph 31 of each SMA states:

> This Agreement shall be governed, construed, and have jurisdiction exclusively in accordance with the laws and within the Courts of the State of New Jersey and without regard to its choice of laws. Any provision held to be invalid, unenforceable, or void shall be reformed to achieve to the maximum extent legally permissible, the intent of the parties as expressed in this Agreement, and all other provisions shall continue in full force and effect.

Norfolk 5488 Project SMA ¶ 31 (ECF No. 9-3, at 5); Hampton 1631 Project SMA ¶ 31 (ECF No. 9-5, at 5); Front Royal 5105 Project SMA ¶ 31 (ECF No. 9-7, at 5); Norfolk 6798 Project SMA ¶ 31 (ECF No. 9-9, at 5). Because Tailor Made voluntarily signed and emailed back an SMA for each of the four relevant projects, NexCore maintains that the SMAs are the operative contract documents and that "[n]one of the emails attached to the Complaint supersede the SMAs." NexCore Mem. (ECF No. 9, at 5-6). In fact, NexCore notes that the first two emails Tailor Made cited and attached to its Complaint specifically referenced the SMAs, and that the last two emails cited make "no reference to accepting a purported offer." NexCore Reply (ECF No. 13, at 6). In support of its Motion, NexCore includes a Declaration from its Secretary and Treasurer Stephen

5

Agnic as an exhibit, Agnic Decl. (ECF No. 9-1). As part of his Declaration, Agnic attaches the complete email exchanges between NexCore and Tailor Made for all four projects. For each one, NexCore requested—and Tailor Made returned—a signed copy of an SMA. Agnic Decl. ¶¶ 7-14 (ECF No. 9-1, at 2-4); NexCore Mem. Exs. 2, 4, 6, 8 ("SMA Email Exchanges") (ECF Nos. 9-2, 9-4, 9-6, 9-8). As such, NexCore argues that "the plain language contained in the executed SMAs makes clear that the parties intended for the SMAs—not any prior email exchanges—to set forth the terms of the parties' contractual relationship." NexCore Mem. (ECF No. 9, at 6).

Tailor Made opposes the Motion, arguing the SMAs are not valid contracts and thus the parties are not bound by the forum-selection clause in each SMA. Opp'n (ECF No. 12, at 1). Further, Tailor Made contends that the court cannot even consider the SMAs that NexCore attached to the Motion because the court may only consider documents that are "integral to and explicitly relied on in the complaint." Id. at 2 (citing Zaks v. Cheslea Therapeutics Int'l Ltd., 780 F. 3d 597, 606-07 (4th Cir. 2025)). Since Tailor Made did not attach the SMAs to the Complaint, it argues the court should ignore the SMAs and view the facts pled in the Complaint in the light most favorable to the non-moving party. See id. (citing Trend Micro Inc. v. Open Text, Inc., No. 1:22-cv-1063, 2023 WL 6446333 (E.D. Va. Sept. 29, 2023)).

Although Tailor Made disagrees with NexCore's premise that the SMA governs here, it agrees that New Jersey law applies in evaluating the validity of the SMAs because it claims New Jersey was the location where the final act to make a binding contract occurred. Id. at 3-4 (citing O'Ryan v. Dehler Mfg. Co., 99 F. Supp. 2d 714, 718 (E.D. Va. June 9, 2000)). Applying New Jersey law, Tailor Made avers the SMAs are unenforceable because the parties did not agree on one or more essential terms, including the scope of work and the price, which means there was

6

no meeting of the minds between the parties. Id. at 4-7. In addition to missing essential terms, Tailor Made claims there was no clear meeting of the minds because the forum-selection clause itself is "confusing, grammatically unclear, and difficult to understand." Id. at 7-8. Without a valid SMA governing, Tailor Made argues that the default federal forum rules apply and venue is proper where "a substantial part of the event or omissions giving rise to the claim occurred," which in this case includes Virginia. Id. at 8 (citing 28 U.S.C. § 1391(b)(2)).

NexCore's reply argues that "[t]he SMAS that Plaintiff signed are drafted to coexist with documents detailing the work to be done on a given project." NexCore Reply (ECF No. 13, at 7). Other contract-specific documents are meant to be incorporated with the SMA to form a single agreement. Id. at 7-8; see, e.g., Norfolk 5488 Project SMA ¶ 6 (ECF No. 9-3, at 1) ("[NexCore's] acceptance of any offer to provide Items which may be presented by Subcontractor is expressly conditional on Subcontractor's assent to all the terms and conditions set forth herein, including those terms herein which may differ from, be inconsistent with, or be in addition to the terms of the Subcontractor's offer."). This includes "the files referenced in the e-mail chains attached as Exhibits 3 and 4 to the Complaint." NexCore Reply (ECF No. 13, at 7). Though Tailor Made attempts to avoid the forum-selection clause by artful pleading, NexCore avers "courts do not permit plaintiffs to circumvent a mandatory forum-selection clause by ignoring the underlying contracts in their pleadings." Id. at 10, 12. As such, NexCore claims the forum-selection clauses at issue here are both valid and enforceable, mandating the parties resolve any disputes involving the SMAs in New Jersey state courts. Id. at 8-9.

## II. ANALYSIS

The doctrine of *forum non conveniens* allows a federal district court to dismiss a case "when an alternative forum has jurisdiction to hear the case," and as a result of the court's

administrative and legal problems, the chosen forum would have been inappropriate. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981). "Dismissal for *forum non conveniens* reflects a court's assessment of a 'range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'" Sinochem Intern. Co. Ltd. V. Malaysia Intern. Shipping Corp., 549 U.S. 422, 429 (2007) (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 723 (1996)) (holding that a district court may "dispose of an action by a *forum non conveniens* dismissal ... when considerations of convenience, fairness, and judicial economy so warrant"). Relevant to this case, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."[2] Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 60 (2013). As part of resolving the *forum non conveniens* inquiry, courts may properly consider affidavits presented by the parties. AdvanFort Co. v. Zamil Offshore Servs. Co., 134 F.4th 760, 774 (4th Cir. 2025) (quoting Van Cauwenberghe v. Biard, 486 U.S. 517, 529 (1988)).

In this case, the court may also consider each project's SMA to resolve this Motion to Dismiss. The SMAs include a forum-selection clause requiring disputes brought under the

---

[2] Although courts can enforce forum-selection clauses through a motion to transfer under 28 U.S.C. § 1404(a), not only did the parties not move to transfer the case here, but a § 1404(a) transfer is also not suitable for a forum-selection clause that "specifies a state or foreign tribunal." Atl. Marine Const. Co., 571 U.S. at 60. The forum-selection clause here states: "This Agreement shall be governed, construed, and have jurisdiction exclusively in accordance with the laws and within the Courts of the State of New Jersey and without regard to its choice of laws." Norfolk 5488 Project SMA ¶ 31 (ECF No. 9-3, at 5); Hampton 1631 Project SMA ¶ 31 (ECF No. 9-5, at 5); Front Royal 5105 Project SMA ¶ 31 (ECF No. 9-7, at 5); Norfolk 6798 Project SMA ¶ 31 (ECF No. 9-9, at 5). By specifying the "Courts of the State of New Jersey," the SMAs limit litigation to only state courts in New Jersey. See Unistaff, Inc. v. Koosharem Corp., 667 F. Supp. 2d 616, 620-21 (E.D. Va. 2009) (holding that the forum-selection clause limited the appropriate forum for the case to the state courts in the Commonwealth of Virginia as opposed to any court in Virginia—including federal district courts—because "[t]he term 'of' is a preposition, the plain and usual meaning of which connotes a possessory relationship," and "[t]he courts 'of the Commonwealth of Virginia' are courts chartered by [that] specified sovereign"). In fact, the Fourth Circuit held that clauses such as the one at issue here are prohibited from being filed in district courts within the Circuit. Id. at 621. Thus, I did not recommend a transfer in lieu of dismissal in this case.

agreement to be litigated in New Jersey state courts. Norfolk 5488 Project SMA ¶ 31 (ECF No. 9-3, at 5); Hampton 1631 Project SMA ¶ 31 (ECF No. 9-5, at 5); Front Royal 5105 Project SMA ¶ 31 (ECF No. 9-7, at 5); Norfolk 6798 Project SMA ¶ 31 (ECF No. 9-9, at 5). Although Tailor Made claims the court cannot consider the SMAs NexCore attached to the Motion, its objection is misplaced. The standard Tailor Made relies on requires courts to consider documents that are "integral or explicitly relied on in the [C]omplaint," but that standard applies to motions to dismiss under the Federal Rules of Civil Procedure, not the doctrine of *forum non conveniens*. Zaks v. Cheslea Therapeutics Int'l Ltd., 780 F. 3d 597, 606-07 (4th Cir. 2025) (resolving a motion to dismiss for failure to state a claim under Rule 12(b)(6)). Since this Motion is under the doctrine of *forum non conveniens*, the court may consider the SMAs NexCore attached. See AdvanFort Co., 134 F.4th at 774. Moreover, even applying the standard Tailor Made relies on, I would nonetheless find the SMAs are integral to the Complaint. Tailor Made specifically references the SMAs in the emails attached to the Complaint as well as the Complaint itself. Compl. ¶¶ 15, 18-22, 76-83 (ECF No. 1, at 3-4, 8-9); Compl. Exs. 1, 2 (ECF Nos. 1-1, 1-2). In fact, two of the email exhibits Tailor Made provided directly incorporated the SMA as an attachment. Compl. Exs. 1, 2 (ECF No. 1-1, 1-2). As such, the court can consider each SMA—and the forum-selection clauses included therein—to resolve the motion to dismiss for *forum non conveniens*.

Tailor Made cannot choose only the portions of the SMA it wishes to enforce with its breach of contract claims while attempting to plead around the forum-selection clause in the SMAs. "[A] plaintiff cannot defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendant to name in the suit." Kelvion, Inc. v. PetroChina Canada Ltd., 918 F.3d 1088, 1093 (10th Cir. 2019) (quoting Kochert v. Adagen Med. Int'l, Inc.,

491 F.3d 674, 679-80 (7th Cir. 2007)). Put differently, Tailor Made cannot avoid enforcement of a forum-selection clause by "artful pleading" of its claims. Id. at 1094. Since Tailor Made references the SMAs in its Complaint and the exhibits to the Complaint, the court can consider the forum-selection clause within each SMA. See Compl. ¶¶ 15, 18-22, 76-83 (ECF No. 1, at 3-4, 8-9); Compl. Exs. 1, 2 (ECF Nos. 1-1, 1-2).

Before district courts enforce a forum-selection clause through *forum non conveniens*, the district courts must determine whether the forum-selection clause is valid. Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 63 (2013). "A forum-selection clause is *prima facie* valid unless the objecting party demonstrates" the clause (1) was fraudulently formed; (2) is so inconvenient or unfair that the plaintiff would not have their day in court; (3) deprives the plaintiff of a remedy; or (4), violates strong public policy of the forum state. Ross v. King's Creek Plantation, LLC, No. 1:15-cv-746, 2015 WL 13854910, at *3 (E.D.Va. 2015). Enforceability of a forum-selection clause also "only applies if the forum selection clause is mandatory rather than permissive." BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin., 884 F.3d 463, 470 (4th Cir. 2018), as amended (Mar. 27, 2018) (citing Albermarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 650-51 (4th Cir. 2010)). "A mandatory clause requires litigation to occur in a specified forum; a permissive clause permits litigation to occur in a specified forum but does not bar litigation elsewhere." Id.; see also Ross, 2015 WL 13854910, at *2 ("A forum-selection clause is mandatory when it contains 'specific language of exclusion.'" (quoting Intracomm, Inc. v. Bajaj, 492 F.3d 285, 290 (4th Cir. 2007))). In order to determine whether a clause is mandatory or permissive, courts will "generally look at the plain meaning and context of words in a clause, as well as past precedent." Ross, 2015 WL 13854910, at *2-3. A valid and mandatory forum-selection clause "represents

10

the parties' agreement as to the most proper forum." Atl. Marine Const. Co., 571 U.S. at 60 (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988)). Thus, a valid and mandatory forum-selection clause should be "given controlling weight in all but the most exceptional cases." Id. (quoting Stewart Org., Inc., 487 U.S. at 33); see also Albermarle Corp., 628 F.3d at 649 ("[W]hen parties to a contract confer jurisdiction and venue on a particular court, as a general matter federal common law directs courts to favor enforcement of the agreement, so long as it is not unreasonable.").

Once a court determines a forum-selection clause is valid and mandatory, the court alters its analysis of a motion to dismiss for *forum non conveniens* in three ways: (1) "the plaintiff's choice of forum merits no weight;" (2) the parties' private interests weigh entirely in favor of the preselected forum because "when parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation;" and (3) "a change of venue will not carry with it the original venue's choice-of-law rules." Ross, 2015 WL 13854910, at *3 (first quoting Atl. Marine Const. Co., 571 U.S. at 60 (2013)).

In this case, the forum-selection clause in each SMA is valid since it was not fraudulently formed, does not severely inconvenience or deprive Tailor Made of a remedy, and does not violate public policy. See id. In order to prove the SMA was fraudulently formed, Tailor Made must established that it was "fraudulently induced to agree specifically to the forum-selection clause," not that "the overall circumstances of the contract were fraudulent." Id. at *5. Here, Tailor Made voluntarily signed the SMAs where the forum-selection clause in each SMA is "written in plain language, set off in its own paragraph, and is in a fairly short contract." Id. at *6. Although Tailor Made believes there was no meeting of the minds between the parties since

11

the SMAs are missing essential terms, Opp'n (ECF No. 12, at 4-7), that is a general critique of the SMAs and not the forum-selection clause within each SMA. See Ross, 2015 WL 13854910, at *5. Tailor Made also contends that forum-selection clause was grammatically unclear and difficult to understand, Opp'n (ECF No. 12, at 7), but that argument is similarly insufficient to find the clause was fraudulently formed. Although the language of the clause could be more precise, it does not undermine the clear intention of the parties to litigate in a New Jersey state court. Tailor Made does not allege that NexCore "made fraudulent misrepresentations about the meaning or the effect of the forum-selection clause." Ross, 2015 WL 13854910, at *6. Even if other terms of the SMA are void or unenforceable, Tailor Made fails to show how the forum-selection clause is void or somehow induced by fraud.

Additionally, New Jersey is not severely inconvenient to the parties such that Tailor Made would be deprived of its day in court given that Tailor Made voluntarily signed the SMA limiting disputes to New Jersey state courts. See id. at *3 ("[W]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."). New Jersey has a six-year statute of limitations for breach of contract and unjust enrichment claims, so Tailor Made can also timely re-file this case in New Jersey state courts and would therefore not be deprived of a remedy. See N.J. Stat. Ann. § 2A:14-1(a). As such, the "private interest factors ... weigh entirely in favor of the preselected forum." Ross, 2015 WL 13854910, at *3.

Finally, enforcing the forum-selection clause does not contravene any public policy. "[I]n federal court, forum selection clauses enjoy a presumption of enforceability," even if state courts decline to enforce such clauses for violating state public policy. Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 652 (4th Cir. 2010). Specifically, "when parties to a

12

contract confer jurisdiction and venue on a particular court, as a general matter federal common law directs courts to favor enforcement of the agreement, so long as it is not unreasonable." Id. at 649. Here, the forum-selection clause that Tailor Made voluntarily agreed to is not unreasonable. Additionally, both New Jersey and Virginia state courts enforce forum-selection clauses. See Caspi v. The Microsoft Network, L.L.C., 732 A.2d 528 (N.J. Super. Ct. App. Div. 1999) ("[F]orum selection clauses are prima facie valid and enforceable in New Jersey."); Paul Bus. Sys., Inc. v. Canon U.S.A., Inc., 397 S.E.2d 804, 807 (Va. 1990) ("[C]ontractual provisions limiting the place or court where potential actions between the parties may be brought are prima facie valid and should be enforced, unless the party challenging enforcement establishes that such provisions are unfair or unreasonable, or are affected by fraud or unequal bargaining power."). As such, enforcing the forum-selection clause in this case does not violate public policy. Therefore, each SMA's forum-selection clause is valid and enforceable.

The forum-selection clause in each SMA is also mandatory and exclusive. Words such as "shall" and "exclusively" in a forum-selection clause often indicate that parties "must bring any legal proceeding relating to the subject matter" of the contract with the clause in that designated forum. Ross, 2015 WL 13854910, at *4. Here, the SMA's forum-selection clause for each project specifies that "This Agreement shall be governed, construed, and have jurisdiction exclusively in accordance with the law and within the Courts of the State of New Jersey and without regard to its choice of laws." Norfolk 5488 Project SMA ¶ 31 (ECF No. 9-3, at 5); Hampton 1631 Project SMA ¶ 31 (ECF No. 9-5, at 5); Front Royal 5105 Project SMA ¶ 31 (ECF No. 9-7, at 5); Norfolk 6798 Project SMA ¶ 31 (ECF No. 9-9, at 5) (emphasis added). As such, the clause mandates the exclusive forum for litigating the SMAs is the state courts of New Jersey. See BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program

13

Admin., 884 F.3d 463, 470 (4th Cir. 2018), as amended (Mar. 27, 2018). Because the forum-selection clause in each SMA is valid and mandatory, the court should not give weight to Tailor Made's choice of forum but rather adhere to the preselected forum determined in the forum-selection clause. See Ross, 2015 WL 13854910, at *3. Thus, the appropriate forum to resolve the breach of contract and unjust enrichment claims in Tailor Made's Complaint is New Jersey state courts.

### III.  RECOMMENDATION

For the foregoing reasons, this report recommends that the court GRANT NexCore's Motion to Dismiss, (ECF No. 8), and dismiss the case without prejudice so Tailor Made can refile and pursue its contract claims in the agreed upon forum of New Jersey state courts.

### IV.  REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.  A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

14

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

                                                /s/
                                   Douglas E. Miller
                                   United States Magistrate Judge
DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia
October 3, 2025